UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAWN M. O'CONNELL,

      Plaintiff,

v.                             CASE No. 8:13-CV-2140-T-TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

_____

<u>O R D E R</u>

      The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, the decision will be affirmed.

I.

      The plaintiff, who was thirty-seven years old at the time of the administrative hearing and who has a high school education, has worked as

---

    [1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

a nursery school daycare teacher (Tr. 60, 61, 77, 170).[2] She filed claims for

Social Security disability benefits and supplemental security income

payments, alleging that she has been disabled since December 15, 2009, due

to depression, major anxiety, and bipolar disorder (Tr. 61, 164). The claims

were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing

before an administrative law judge. The law judge found that the plaintiff had

severe impairments of obesity, bipolar disorder, and panic disorder (Tr. 39).

She concluded that, with these impairments (Tr. 42-43):

> the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b); however, she is
> limited to unskilled work, cannot work with the
> public, and cannot have more than occasional
> interaction with co-workers and supervisors.

The law judge determined that these restrictions prevented the plaintiff from

performing past work (Tr. 47). However, based upon the testimony of a

vocational expert, the law judge found that there are jobs that exist in

significant numbers in the national economy that the plaintiff can perform,

such as small products assembler, produce inspector, and merchandise marker

---

[2]The plaintiff attended special education classes in school (Tr. 170).

(Tr. 48).  Therefore, the law judge ruled that the plaintiff was not disabled

(id.).  The Appeals Council let the decision of the law judge stand as the final

decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and

supplemental security income, a claimant must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical

or mental impairment which ... has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A),

1382c(a)(3)(A).  A "physical or mental impairment," under the terms of the

Social Security Act, is one "that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques."    42 U.S.C. 423(d)(3),

1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not

disabled must be upheld if it is supported by substantial evidence. 42 U.S.C.

405(g). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v. Perales,

402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305

U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact

made by administrative agencies ... may be reversed ... only when the record

compels a reversal; the mere fact that the record may support a contrary

conclusion is not enough to justify a reversal of the administrative findings."

Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert.

denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the

courts, to resolve conflicts in the evidence and to assess the credibility of the

witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is

the responsibility of the Commissioner to draw inferences from the evidence,

and those inferences are not to be overturned if they are supported by

substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir.

1963).

Therefore, in determining whether the Commissioner's decision

is supported by substantial evidence, the court is not to reweigh the evidence,

but is limited to determining whether the record as a whole contains sufficient

evidence to permit a reasonable mind to conclude that the claimant is not

disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff's sole argument is that the law judge failed to give controlling weight to the opinion of her treating physician, Dr. Edwin Jackson, a psychiatrist at Suncoast Center, Inc. (Doc. 15). That contention is baseless because the law judge stated good cause for discounting his opinion.

Dr. Jackson completed a Mental Residual Functional Capacity statement, which is a checklist form of questions regarding the plaintiff's functioning in the areas of social interaction, sustained concentration and persistence, and adaption (Tr. 450-53). Dr. Jackson indicated with a checkmark that, for every stated mental task, except for maintaining personal appearance and hygiene, the plaintiff's degree of impairment was "Marked" or "Extreme" (id.). Thus, the thrust of Dr. Jackson's opinion is that the plaintiff's mental impairments are debilitating.

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not according them such

weight. <u>Phillips</u> v. <u>Barnhart</u>, 357 F.3d 1232, 1240 (11th Cir. 2004).  Good

cause exists when the treating physician's opinion is not bolstered by the

evidence, the evidence supports a contrary finding, or the opinion is

conclusory or inconsistent with the physician's own medical records.  <u>Lewis</u>

v. <u>Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).

  The law judge acknowledged the Mental Residual  Functional

Capacity statement in which Dr. Jackson opines that the plaintiff had marked

to extreme mental limitations (Tr. 46).  However, the law judge rejected Dr.

Jackson's opinion, explaining (<u>id</u>.):

> The undersigned considered Dr. Jackson's opinion
> and notes the undersigned is free to reject the
> opinion of a psychiatrist when it is inconsistent
> with the other substantial evidence of record.
> Here, this is the case.  Throughout the records, Dr.
> Jackson's actual notes reveal most mental status
> examinations were normal, contrary to his medical
> source statement[](Ex. 14F, 15F). She appeared to
> be doing well when there were no problems with
> her teenage son.   Thus, this mental health
> specialist's opinion has been considered but is
> found not to be persuasive.  Further there are huge
> gaps in treatment and the record shows improved
> functioning with medication.

(See also Tr. 40).    This explanation provides good cause for discounting the Mental Functional Capacity Statement.    See Lewis v. Callahan, supra. Further, the explanation is supported by substantial evidence.

Initially, it is noted that the Mental Residual Functional Capacity statement is conclusory (Tr. 450-53). Thus, Dr. Jackson's opinions consisted of checkmarks on a form beside the words "Marked" or "Extreme," thereby indicating that the plaintiff was either seriously impaired, or retained no useful ability, in every mental functional area except for personal appearance and hygiene (id.). Dr. Jackson, however, provided no explanation for any of those opinions (id.).    Further, as discussed subsequently, Dr. Jackson's treatment notes provide no insight as to the bases for his extreme opinions. For example, Dr. Jackson opined that the plaintiff had a "marked" limitation in her ability to "remember locations and workday procedures and instructions" (Tr. 452), but none of Dr. Jackson's treatment notes indicate the plaintiff's memory was impaired or that she had other deficient mental functioning that could affect such tasks.

Thus, the conclusory nature of Dr. Jackson's opinions alone provides a recognized basis for discounting the Mental Residual Functional

Capacity statement. Lewis v. Callahan, supra; Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 313 (11th Cir. 2007); see, e.g., Brown v. Commissioner of Social Security, 442 Fed. Appx. 507, 512 (11th Cir. 2011) (the law judge stated good cause to not give controlling weight to the treating physician's opinions stated in forms which did not reference his treatment records or adequately explain his opinions); Burgin v. Commissioner of Social Security, 420 Fed. Appx. 901, 903 (11th Cir. 2011) (the adjudicator "was free to give little weight to the conclusory assertions contained in the questionnaires because they merely consisted of items checked on a survey, with no supporting explanations").

Furthermore, the law judge's finding that Dr. Jackson's opinions in the Mental Residual Functional Capacity statement are inconsistent with his treatment notes is supported by substantial evidence. In this regard, the law judge correctly states that "Dr. Jackson's actual notes reveal most mental status examinations were normal" (Tr. 46). Thus, despite the plaintiff's subjective complaints of anxiety, stress, and irritability (Tr. 392, 393, 441, 460, 496), Dr. Jackson's treatment notes regularly state that the plaintiff's "[t]hought content and thought processes are within normal limits. Insight

and judgment are fair" (Tr. 393, 441, 460, 461, 470, 471, 496, 498) and there were no thoughts of self-harm (Tr. 393, 460, 461, 470, 471, 496, 498). Further, Dr. Jackson documents normal speech (Tr. 460, 461, 470, 471) and "clear sensorium" (Tr. 393).[3]  Moreover, Dr. Jackson even stated that the plaintiff was "doing well" during several appointments (Tr. 392, 461, 470; see also Tr. 393).

It is recognized that, although Dr. Jackson's notes said that the plaintiff was doing well on several occasions, at other times the notes indicated that the plaintiff said things were not going well (Tr. 460) or that she was under a lot of stress (Tr. 471, 496).  The notes reflect that these conditions are related to financial stress that caused the plaintiff and her two sons to move back with her parents, or her fifteen-year-old son's "severe behavioral problems" (Tr. 439), which had led to an arrest for marijuana and fighting (Tr. 314).  Significantly, there is nothing even in the notes indicating

---

[3]Additionally, the law judge noted that no mental abnormalities were indicated during the plaintiff's intake in 2010 at Suncoast (Tr. 45). The plaintiff's treatment records for her physical ailments also do not reflect any abnormalities in the plaintiff's mental condition (see, e.g., Tr. 601 ("Oriented x3"); Tr. 570 ("oriented x3" and "mood/affect n[or]m[a]l")).

adverse circumstances that support the extreme and marked limitations opined by Dr. Jackson.

Furthermore, the law judge noted Dr. Jackson's observation that the plaintiff's mood improved when her son's behavioral problems decreased (Tr. 392, 440, 470; see also Tr. 314). In this respect, Dr. Jackson stated on January 19, 2012, which was less than two months before the hearing, that the plaintiff "is doing much better," adding "[s]he is doing a little better now because her family seemed to be stable" (Tr. 498).

In sum, substantial evidence clearly supports the law judge's determination that Dr. Jackson's opinion of extreme and marked limitations is inconsistent with his treatment notes and, therefore, the law judge reasonably found Dr. Jackson's opinions not persuasive. See Lewis v. Callahan, supra; Barclay v. Commissioner of Social Security, supra, 274 Fed. Appx. at 740 (lack of supporting medical records may be considered in rejecting the treating physician's opinion); Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004) (treating physician's report "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory").

-10-

The law judge, furthermore, specified in the decision other record evidence that is inconsistent with Dr. Jackson's conclusory opinions of disabling mental limitations. For example, the law judge considered the opinion of consultative examiner, Dr. Linda Appenfeldt (Tr. 40, 45, 46; see Tr. 397-400). Dr. Appenfeldt reported that, during the evaluation, the plaintiff was oriented x3 with a euthymic mood, the plaintiff had normal speech and appropriate eye contact, and her mannerisms and gestures facilitated communication (Tr. 398). Furthermore, Dr. Appenfeldt observed the plaintiff had sustained concentration, persistence and understanding, and the plaintiff's memory and social interaction were within normal limits (Tr. 398, 399).

Additionally, the law judge considered the opinions of nonexamining reviewing psychologists Jane Cormier and Robert Hodes (Tr. 41, 42, 46). Dr. Cormier opined that the plaintiff had moderate limitations in maintaining social functioning and concentration, persistence or pace (Tr. 430). Dr. Hodes opined that the plaintiff had moderate limitations in maintaining social functioning, but only mild limitations in concentration, persistence, or pace (Tr. 412). The law judge, noting their expertise in Social

Security evaluation and familiarity with the record, gave their opinions "some weight" (Tr. 46). See 20 C.F.R. 404.1527(e)(2), 416.927(e)(2) (state agency consultants are experts in Social Security disability evaluation and the adjudicator must consider their opinions). The law judge then reasonably concluded that "[t]he overall medical consensus has been that the claimant could perform sustained work activity within prescribed limitations, which were adopted in the residual functional capacity found in the case" (Tr. 47).

The plaintiff baselessly argues that the law judge's explanation for discounting Dr. Jackson's opinion is inadequate because it is purportedly based on only "a partial view of the Plaintiff's condition" (Doc. 15, p. 6). In this regard, the plaintiff contends that Dr. Jackson's opinion was based on "the Plaintiff's 50 visits to the Sun Coast Center over 11 years of evaluation" and the law judge allegedly did not consider the entirety of the plaintiff's treatment records at Suncoast in discounting Dr. Jackson's opinion (id., p. 5). This contention is meritless for several reasons.

First, there is no basis for the plaintiff's contention that Dr. Jackson's opinions in the Mental Functional Capacity statement are premised upon the plaintiff's alleged 50 visits to Suncoast over 11 years (id.). Thus,

-12-

as discussed above, Dr. Jackson did not state the basis of his opinions. Importantly, the Mental Functional Capacity statement directed Dr. Jackson to "answer these questions based on your examination and/ or treatment of this individual" (Tr. 450) (emphasis added).

Furthermore, the decision reflects that the law judge considered the plaintiff's entire mental health history, despite the fact that the law judge is obligated to consider only those records that shed light on the plaintiff's mental condition since the alleged onset of disability, which is December 15, 2009. See Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999) (relevant documents are those that pertain to the alleged disability period). In particular, the law judge noted that the plaintiff had been treated at Suncoast on-and-off since 2006 (Tr. 40, 44, 45, 46). Notably, the law judge did not find the plaintiff's prior mental health treatment supported a finding of mental disability, as there was a lengthy gap in treatment and the record shows the plaintiff's functioning improved with medication (Tr. 40, 44, 46).

Moreover, the plaintiff's contention that mental health records from years prior to the alleged disability period support her claim is inconsistent with the plaintiff's allegation that her mental condition had

-13-

worsened as of December 15, 2009. Thus, the plaintiff testified that, despite having mental problems for years, she stopped working in December 2009 as a nursery school teacher because she "couldn't handle [the stress of it all] anymore" (Tr. 67; see also Tr. 203 (plaintiff stating that her "depression & anxiety is wors[e]")).  A fortiori, the mental health records preceding the alleged onset date would reflect less, not more, severe mental symptoms.

Most significantly, the plaintiff has not identified any medical evidence, from any time period, that substantiates, much less compels, the law judge to accept the extreme mental limitations opined by Dr. Jackson. In this regard, the plaintiff cites to Global Assessment of Functioning (GAF) scores between 49 and 60 (Doc. 15, p. 5). However, the Commissioner declines to endorse the use of GAF scores in disability determinations. Wind v. Barnhart, 133 Fed. Appx. 684, 692 n. 5 (11th Cir. 2005). Furthermore, the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) omits the GAF scale. See DSM-5, p. 16 (noting that the GAF was dropped from this edition due to lack of clarity and reliability). Thus, as the Commissioner correctly notes, the GAF scores generally lack probative value because they reflect a person's mental state on a particular

-14-

day, and the scores incorporate factors unrelated to the pertinent issue of a person's mental ability to work (Doc. 18, p. 8). Moreover, the plaintiff's GAF scores – which are moderate or on the borderline thereof – do not compel a finding of debilitating mental impairments. See DSM-IV-TR, p. 34 (noting that 51 to 60 reflects moderate difficulties in social, occupational or school functioning). In fact, Dr. Appenfeldt assessed the plaintiff with a GAF of 68, which indicates only some mild symptoms (id.).

Finally, the plaintiff cites to her subjective complaints of irritability, difficulty coping with stressors, panic attacks, anxiety, and sleep disruption (Doc. 15, p. 6). The law judge noted in the decision the plaintiff's reports of such symptoms (see Tr. 40, 41, 44). However, the law judge found that the plaintiff's subjective complaints were not fully credible (Tr. 44, 45, 47), and the plaintiff has not challenged that credibility determination.

Furthermore, the law judge reasonably evaluated the plaintiff's mental status and did not give the condition short shrift. Thus, she found that the plaintiff had severe mental impairments of bipolar disorder and panic disorder and that those impairments limited the plaintiff's mental residual functional capacity to unskilled work that does not involve the public or

require more than occasional interaction with co-workers and supervisors (Tr. 39, 42-43). Thus, the law judge only rejected the allegations that her mental impairments were disabling (Tr. 44, 45). Since the law judge reasonably and adequately discounted Dr. Jackson's opinions, there is no evidence in the record that compels a contrary conclusion. See Adefemi v. Ashcroft, supra.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 17th day of September, 2014.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

-16-